**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VALUED PHARMACY SERVICES | ) | |
| OF THE MIDWEST, LLC DBA | ) | |
| NFP RX SOLUTIONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:21-CV-400 RLW |
| v. | ) | |
| | ) | |
| AVERA HEALTH PLANS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Avera Health Plans, Inc.'s Motion to Dismiss or Transfer. (ECF No. 16). Plaintiff Valued Pharmacy Services ("VPS") opposes the Motion (ECF No. 20) and it is fully briefed. The Court will grant Avera's Motion for the reasons below.

## BACKGROUND

The following facts are alleged in VPS's Amended Complaint. (ECF No. 15). VPS is a pharmacy benefits management consulting firm that helps employers and health plan providers develop customized pharmacy benefit plans. *Id.* at ¶ 15. VPS is a limited liability company organized under the laws of Missouri with its principal office in Chesterfield, Missouri. *Id.* at ¶ 10. VPS's members are citizens of New York and Delaware. *Id.* Defendant Avera is a health plan provider that serves more than 85,000 customers. *Id.* at ¶ 16. Avera is incorporated under the laws of South Dakota with its principal office in Sioux Falls, South Dakota. *Id.* at ¶ 11.

In or around February 2020, Avera contacted VPS through Avera's agent, Axia Strategies. *Id.* at ¶ 17. Avera sought VPS's assistance in redesigning its specialty pharmacy benefits plan. *Id.*

at ¶¶ 18-22. Avera had contacted another St. Louis-based firm, PillarRX Consulting, LLC, before reaching out to VPS. *Id.* at ¶ 22.

At the start, Avera told VPS it did not have the funds to pay VPS's upfront consulting fee. *Id.* at ¶ 23. The parties thus agreed to a shared savings model in which VPS would receive 20% of the savings produced by its program. *Id.* at ¶ 24. In February, March, and May of 2020, Luke Merkel—Avera's Director of Pharmacy (ECF No. 17-1)—represented to VPS that Avera understood the commission structure. *Id.* During a call in May 2020, Merkel told VPS that Avera was moving forward with the agreement. *Id.* at ¶ 26. During a call in June 2020, Merkel told representatives from Avera, Axia, VPS, and CVS Health that Avera was "in operation mode" with VPS's program. *Id.* at ¶ 27. VPS alleges it provided information, services, and work product to Avera in reliance on Avera's representations. *Id.* at ¶ 28. The parties entered a non-disclosure agreement ("NDA") on March 23, 2020. *Id.* at ¶ 29.

VPS alleges it undertook significant work for Avera throughout 2020. *Id.* at ¶ 30-34. VPS alleges it provided "crucial, proprietary information regarding limited distribution drugs, and specialty drugs that did not offer copay cards or other incentives." *Id.* at ¶ 41. In May 2020, Avera decided to formally change its plan design in two states, effective January 1, 2021. *Id.* at ¶ 43. Around this time, VPS prepared language for Avera's summary benefits guide and its summary of plan documents. *Id.* at ¶ 44. Avera requested additional copies of the language in a May 2020 email. *Id.* at ¶ 46. Avera also asked VPS to draft and send a master services agreement ("MSA") to Axia. *Id.* at ¶ 47.

As part of its efforts in 2020, VPS secured an agreement with CVS to recognize and work with Avera's specialty pharmacy. *Id.* at ¶ 48-60. VPS developed the technology and relationships necessary to create a secure flow of information between CVS, Avera, and each of Avera's

specialty pharmacies. *Id.* at ¶ 56. VPS also taught personnel at three specialty pharmacies how to implement the new program. *Id.* at ¶ 57. According to VPS, it saved Avera "countless hours of research and setup time." *Id.* at ¶ 58. On August 20, 2020, Avera told VPS to prepare to launch the program on January 1, 2021. *Id.* at ¶ 60. VPS alleges it agreed to do so because Avera had agreed to the fee structure, signed an NDA, and continued to engage on the project. *Id.* at ¶ 64.

VPS sent a detailed MSA to Axia in July 2020. *Id.* at ¶ 62. The parties continued negotiations in September 2020. *Id.* at ¶ 65. VPS asserts that, by this time, the program was "essentially operable and ready to go live on January 1, 2021." *Id.* at ¶ 66. The next month, VPS sent a final draft of the MSA to Avera through Axia. *Id.* at ¶ 67. The parties then engaged in negotiations via telephone for several days. *Id.* According to VPS, the MSA included terms previously agreed upon by the parties, including the 20% commission structure. *Id.* at ¶ 68.

VPS then drafted a notification letter to send to approximately 1,100 Avera customers. *Id.* at ¶ 70. VPS printed out and prepared the letters for mailing. *Id.* at ¶ 71. During a call in October 2020, Avera asked VPS if Avera could manage customer communications. *Id.* at ¶ 72. Because VPS had already done the work, it declined Avera's request. *Id.* VPS did, however, offer Avera a 10% discount if Avera would handle customer communications going forward. *Id.* VPS alleges "it was not until after Avera had everything that it needed from VPS to implement the new program" that it requested a discount. *Id.* at ¶ 76. VPS also alleges Avera then "feigned surprise at one component of the program." *Id.* at ¶ 73. In response to Avera's concerns, VPS developed two alternatives to the component in question and proposed them to Avera three days later. *Id.* at ¶ 77-78. Avera declined the alternatives and stated it no longer wished to move forward with the new program. *Id.* at ¶ 79. Then, on November 5, 2020, Avera insisted that VPS "had provided nothing of value." *Id.* at ¶ 80. Avera stated it would keep the plan changes for Minnesota and South Dakota,

3

but would make the changes without VPS's assistance. *Id.* at ¶ 80. Avera told VPS it would not

implement any other part of the program except a specific change to its coinsurance policy. *Id.*

On December 7, 2020, Merkel called Dave Lee—VPS's managing director—and indicated

he would not use the plan-related letters developed by VPS. *Id.* at ¶ 83. Merkel told Lee that VPS's

program was not proprietary and Avera would not pay VPS for its work. *Id.* at ¶ 84. VPS learned

in January 2021 that Avera had sent letters to customers explaining policy changes that contained

VPS's phone number and the language VPS provided in the spring of 2020. *Id.* at ¶¶ 85-92.

VPS filed this action on April 5, 2021. (ECF No. 1). VPS's Complaint asserts claims for

fraudulent inducement, breach of contract, quantum meruit, and unjust enrichment. (ECF No. 15,

¶¶ 93-125). VPS seeks actual and exemplary damages with interest, attorney's fees, legal expenses,

and court costs. *Id.*

## LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a party to move to dismiss for

lack of personal jurisdiction. To survive such a motion, a plaintiff must state sufficient facts to

support a reasonable inference that the defendant can be subjected to jurisdiction within the state.

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592-93 (8th Cir. 2011) (citing *Dever v.*

*Hentzen Coatings*, 380 F.3d 1070, 1072 (8th Cir. 2004)). Generally, the Court must make two

separate inquiries: one to establish if the defendant's conduct is covered by Missouri's long-arm

statute, and another to analyze whether the exercise of jurisdiction comports with due process

requirements. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012) (citing *Bryant v.*

*Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo.2010)). "Although the evidentiary

showing required at the prima facie stage is minimal, the showing must be tested, not by the

pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." *Id.* (quoting

*Dever*, 380 F.3d at 1072-73) (internal quotation marks omitted). The Court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *First Nat'l Bank of Lewisville, Ark. v. First Nat'l Bank of Clinton, Kentucky*, 258 F.3d 727, 729 (8th Cir. 2001)).

## DISCUSSION

Avera asks this Court to dismiss VPS's Amended Complaint for lack of personal jurisdiction. (ECF No. 16, ¶¶ 1-4). Avera also asserts that venue in the Eastern District of Missouri is improper. *Id.* In the alternative, Avera argues that the case should be transferred under 28 U.S.C. § 1404 and the doctrine of forum non conveniens. *Id.* at ¶ 5. VPS counters that the Court may exercise personal jurisdiction over Avera because Avera's contacts with Missouri were intentional, purposeful, and recurring. (ECF No. 20, p. 4). VPS also contends that transfer under the doctrine of forum non conveniens is unwarranted. *Id.* at 11. For the reasons below, the Court finds it lacks personal jurisdiction over Avera.

### I.  General Jurisdiction

"Personal jurisdiction can be specific or general." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9; (1984). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (citing *Goodyear*, 564 U.S. at 923). "The paradigm all-purpose forums for general jurisdiction are a corporation's place

of incorporation and principal place of business." *Daimler*, 571 U.S. at 118–19 (citing *Goodyear*, 564 U.S. at 923-24). A "corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Daimler*, 571 U.S. at 132 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). The Supreme Court cautioned that the exercise of due process does not approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business. *Daimler*, 571 U.S. at 119. "To 'approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business,' the Supreme Court explained, 'is unacceptably grasping.'" *Mitchell v. Eli Lilly & Co.*, 159 F. Supp. 3d 967, 973 (E.D. Mo. 2016) (citing *Daimler*, 571 U.S. at 138) (quotation marks and citation omitted). Rather, only in an "exceptional case" will a corporation's operations in a forum other than its formal place of incorporation or principal place of business be so substantial and of such a nature as to render the corporation at home in that State. *Daimler*, 571 U.S. at 139, n.19.

Avera is incorporated in South Dakota with its principal office in Sioux Falls, South Dakota. (ECF No. 17-3, ¶¶ 3-4). Avera is a licensed Health Management Organization in South Dakota, Iowa, and Nebraska. *Id.* at ¶ 6. It is not licensed or registered to transact business in Missouri. *Id.* at ¶ 7. Avera does not have employees in Missouri, nor does it own, lease, or otherwise maintain property in Missouri. *Id.* at ¶¶ 8-10. VPS does not allege an "exceptional case" to counter these facts and does not address the issue in its Response. (ECF No. 20). The Court finds it lacks general jurisdiction over Avera.

6

## II.  Specific Jurisdiction

 "A district court may exercise specific jurisdiction over an out-of-state defendant only to the extent permitted by the state's long-arm statute and the Constitution's due process clause." *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019). That is, even if personal jurisdiction over a defendant is authorized by a state's long-arm statute, the Court's exercise of personal jurisdiction must still comply with the Due Process Clause of the Fourteenth Amendment. *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

VPS contends that this Court has specific jurisdiction over Avera because Avera's contacts with Missouri were not "random, fortuitous, or attenuated," but intentional, purposeful, and recurring. (ECF No. 20, p. 4) (citing *Burger King Corp. v. Rudzewics*, 471 U.S. 462, 473 (1985)). VPS argues that the Eighth Circuit's five-factor test—discussed below—weighs in its favor. *Id.* at 5. Avera, on the other hand, asserts that contact with VPS alone is not a sufficient basis for the exercise of specific jurisdiction. (ECF No. 17, pp. 6-7) (citing *Walden*, 571 U.S. at 283). Avera argues that none of its suit-related conduct occurred in Missouri. *Id.* at 7.

"Because the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (citation and internal quotation marks omitted).[1]

---

[1] On August 25, 2021, Avera filed a Notice of Supplemental Authority (ECF No. 22) notifying this Court of the Eighth Circuit's decision in *Morningside Church*. VPS filed a response and argued that Avera's Notice was improper because it was filed without leave. (ECF No. 23). VPS is correct and the Court will strike Avera's Notice.

"Due process requires that a defendant have certain 'minimum contacts' with the forum State for the State to exercise specific jurisdiction." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015). "The defendant's connection with the forum state must 'be more than random, fortuitous, or attenuated, and must permit the defendant to reasonably anticipate being haled into court there.'" *Morningside Church*, 9 F.4th at 619 (quoting *Creative Calling*, 799 F.3d at 980). "The contacts therefore have to be based on 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Morningside Church*, 9 F.4th at 619 (quoting *Federated Mut.*, 928 F.3d at 720). There must be "an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.,* 137 S. Ct. 1773, 1780 (2017). When "there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id*. at 1781.

The Eighth Circuit has devised a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. *Morningside Church*, 9 F.4th at 619-620. These factors are: (1) the nature and quality of contacts with the forum state, (2) the quantity of contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) convenience of the parties. *Id.* (quoting *Federated Mut.*, 928 F.3d at 720) (internal quotation marks omitted). While the Court must consider all factors, the first three are primary. *K-V Pharm.*, 648 F.3d at 592-93 (citation omitted).

In the context of a contractual dispute, the "contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *Fastpath, Inc. v. Arbela Techs. Corp.,* 760 F.3d 816, 821 (8th Cir. 2014)

8

(quoting *K–V Pharm.*, 648 F.3d at 593) (internal quotation marks omitted). The Court should not apply mechanical tests or conceptualistic theories of the place of contracting or performance. *Id.* Instead, the Court must consider the terms of the contract and its contemplated future consequences. *Id.*

In the context of intentional torts, the Court must apply the "effects test" first set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Morningside Church*, 9 F.4th at 620. In *Calder*, the Court held that personal jurisdiction exists over a nonresident defendant who commits an intentional tort only when its effects are felt primarily within the forum state. *Id.* (citing *Pederson v. Frost*, 951 F.3d 977, 981 (8th Cir. 2020)); *Calder*, 465 U.S. at 790. The Court has since made clear that the test is subject to two "interrelated limitations." *Id.* (citing *Pederson*, 951 F.3d at 981). First, the defendant's relationship with the forum state must arise out of contacts the defendant itself created with the forum state. *Id.* (citing *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020)). Second, courts must consider "the defendant's contacts with the forum state *itself*, not the defendant's contacts with persons who reside there." *Id.* (quoting *Whaley*, 946 F.3d at 451). The question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (quoting *Walden*, 571 U.S. at 290). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* (quoting *Walden*, 571 U.S. at 285) (internal quotation marks omitted). Put another way, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* (quoting *Walden*, 571 U.S. at 290) (internal quotations marks omitted).

As to factors one and two of the five-factor test—the nature, quality, and quantity of contacts with the forum state—VPS argues that Avera's emails, phone calls, and other communications with VPS weigh heavily in its favor. (ECF No. 20, p. 7). According to VPS,

9

Avera "reached out" to VPS and made a "contractual promise to pay VPS." *Id.* at 7. VPS further alleges that employees from Avera exchanged more than 150 emails with VPS employees in Missouri; engaged in more than 45 conference calls with VPS employees in Missouri; and conducted more than 12 virtual meetings with VPS employees in Missouri. *Id.* Conversely, Avera states that none of its employees visited VPS in Missouri and none of its suit-related activity took place in Missouri. (ECF No., 17, p. 10).

It is Avera's conduct, not VPS's, that this Court must consider. *Walden*, 571 U.S. at 285. VPS does not allege that Avera "purposefully availed [itself] of [Missouri's] benefits and protections." *See Morningside Church*, 9 F.4th at 620 (citation and internal quotation marks omitted). While calls, emails, and other forms of communication directed at a plaintiff can be relevant contacts, they are not enough on their own where the plaintiff itself is the defendant's only link to the forum state. *Id.* (citing *Pederson*, 951 F.3d at 980). There is no indication that Avera's communications were part of a broader effort to establish a connection with Missouri.[2] *See id.* Avera does not offer health plans in Missouri. (ECF No. 17-1, ¶ 5). It is not licensed or registered to transact business in Missouri and it does not maintain any property in the state. (ECF No. 17-3, ¶¶ 7, 9). Avera does not generate revenue in Missouri and none of its employees live in the state. *Id.* at ¶¶ 8, 10. Based on these facts, the Court can only conclude that Avera's communications were directed at Missouri simply because VPS "just happens" to reside here. *See Morningside Church*, 9 F.4th at 620.

VPS cites *Creative Calling* for the proposition that "[a] defendant's solicitation of a business relationship with a company incorporated in the forum State that takes place within that

---

[2] VPS alleges that Avera had previously contacted another Missouri-based consulting firm. (ECF No. 15, ¶ 22). VPS does not allege, however, that Avera did so to establish a connection with Missouri or that any meaningful relationship developed.

State is a relevant contact in determining whether its courts may exercise personal jurisdiction." (ECF No. 20, p. 9) (citing *Creative Calling,* 799 F.3d at 980). The Court agrees that such contacts are relevant. In this case, however, the contacts at issue differ in both context and scope from those at issue in *Creative Calling*.

In *Creative Calling*, defendant LF Beauty of Hong Kong emailed a PowerPoint presentation to Creative Calling, an Iowa corporation with its principal place of business in Iowa. (*Creative Calling,* 799 F.3d at 978). LF Beauty sought to manage Creative Calling's operations infrastructure in China for a fee. *Id.* The parties entered into an agreement whereby LF Beauty would oversee Creative Calling's operations in China. *Id.* As required by the contract, LF Beauty sent thousands of pre-production samples to Creative Calling in Iowa. *Id.* Under the agreement, in exchange for a fee, LF Beauty was to receive payments from Creative Calling's customers and remit those payments to Creative Calling in Iowa. Accordingly, LF Beauty made significant payments to Creative Calling in Iowa. *Id*. Put another way, LF Beauty—a service provider— contacted a potential client in Iowa. *Id.* Once Creative Calling became a client, LF Beauty sent materials to the client in Iowa. *Id.*

Here, it was the potential client (Avera) that contacted the service provider (VPS) in the forum state. (ECF No. 15, ¶ 17). The distinction is relevant in this case. First, VPS sent its work product to Avera in South Dakota. *Id.* at ¶¶ 38, 40, 42, 44. That is, unlike *Creative Calling*, the "samples" were not directed at the forum state. Second, also unlike *Creative Calling*, there are no allegations that Avera sent money to VPS. That is to say nothing of the difference between sending emails to an entity in the forum state and mailing thousands of physical items to that state. While *Creative Calling* is instructive, it is distinguishable.

VPS further argues that Avera's phone and email communications are "evidence of a continuous, systematic business relationship" directed at Missouri. (ECF No. 20, p. 9) (citing *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427 (8th Cir. 1995); *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515 (8th Cir. 2010); and *Toomey v. Dahl*, 63 F. Supp. 3d 982 (D. Minn. 2014)). In each of VPS's cited cases, however, the out-of-state defendant had a physical connection with the forum state. In *Wessels*, the defendant paid the plaintiff a $50,000 retainer and twice visited the plaintiff in the forum state. *Wessels, Arnold & Henderson*, 65 F.3d at 1430. In *Wells Dairy*, the defendant remitted payment to the plaintiff in the forum state and received plaintiff's product in the forum state. *Wells Dairy*, 607 F.3d at 519. Lastly, in *Toomey*, the defendant approved a decision to relocate management of his investments to the forum state and traveled to the forum state. *Toomey*, 63 F. Supp. 3d at 991. Because VPS is Avera's only link with the forum state, the Court finds that the first two factors weigh heavily against the exercise of personal jurisdiction. *See Morningside Church*, 9 F.4th at 620-21.

As to the third factor—the relation of the cause of action to the contacts—VPS argues that its causes of action arise directly out of Avera's contacts with Missouri. (ECF No. 20, p. 9). But "it is [Avera's] contacts and conduct with the forum state *itself* that are the focus, not [Avera's] contacts with people who happen to reside there." *Pederson*, 951 F.3d at 981 (emphasis original). Even though VPS experienced the alleged tort and breach in Missouri, Avera did "nothing to tether the effect of [its] actions to Missouri." *Id.* The mere existence of a contract alone—NDA or otherwise—does not provide the requisite contacts. *Fastpath, Inc.*, 760 F.3d at 821.[3]

---

[3] VPS argues that because VPS accepted Avera's offer in Missouri, the contract is deemed made in Missouri. (ECF No. 20, p. 8) (citing *Johnson Heater Corp. v. Deppe*, 86 S.W.3d 114 (Mo. Ct. App. 2002)). Even assuming Avera made the offer—which Avera disputes—the existence of a contract alone is insufficient for the purposes of personal jurisdiction. *Johnson Heater Corp.*, 86 S.W.3d at 120 ("Even if [the defendant's] activity constituted the making of a contract or the

The Eighth Circuit's decision in *Eagle Technology v. Expander Americas, Inc.* is instructive. 783 F.3d 1131 (8th Cir. 2015). In *Eagle Tech*, the plaintiffs sued the defendants for breach of contract, promissory estoppel, and quantum meruit. *Eagle Tech*, 783 F.3d at 1135. The district court dismissed the quantum meruit action for lack of personal jurisdiction, explaining that the defendant corporation was not authorized to do business in Missouri, did not advertise in Missouri, never sent employees to Missouri, and never sent money to Missouri.[4] *Id.* The Eighth Circuit affirmed, despite plaintiffs' argument that daily emails, phone calls, and other communications with the plaintiffs in Missouri amounted to sufficient minimum contacts with the state. *Id.* at 1137. In doing so, the court relied on its decision in *Scullin Steel Co. v. National Railway Utilization Corp.*, 676 F.2d 309 (8th Cir. 1982).

In *Scullin Steel*, the Eighth Circuit considered whether the defendant corporation's contacts with Missouri were sufficient to warrant the exercise of personal jurisdiction. *Id.* Defendant Scullin Steel was a Delaware corporation with its principal place of business in St. Louis, Missouri. *Id.* at 310. Plaintiff National Railway was a South Carolina corporation with its principal place of business in Philadelphia, Pennsylvania. *Id.* The parties negotiated a sales agreement whereby Scullin Steel would sell 2,700 railway car sets to National Railway. *Id.* National Railway executed the agreement in Philadelphia and Scullin Steel executed the agreement in St. Louis. *Id.* Scullin Steel's only plant was in St. Louis and all payments by National Railway were sent to Scullin Steel in St. Louis. *Id.*

---

transacting of business in this state, his contacts overall are insufficient under the due process clause.").

[4] The district court granted summary judgment for the defendants on the remaining claims. *Eagle Tech*, 783 F.3d at 1135.

Although not requested by National Railway, Scullin Steel manufactured the car sets with holes for dead-lever fulcrum brackets. *Id.* As a result, National Railway accepted only a small portion of the car sets and refused to pay Scullin Steel's invoice. *Id.* Scullin Steel then filed a diversity suit against National Railway in the Eastern District of Missouri. *Id.* National Railway moved to dismiss for lack of personal jurisdiction. *Id.* at 310-11. The district court granted the motion. *Id.* The Eighth Circuit affirmed, noting that National Railway is not authorized to do business in Missouri, has no office or personnel in Missouri, owns no real estate in Missouri, and has no agent for service of process in Missouri. *Id.* at 312. "The use of interstate facilities (telephone, the mail), the making of payments in the forum state, and the provision for delivery within the forum state are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process." *Id.* at 314 (citations omitted).

Considering the above, the Court is not persuaded that Avera had sufficient contacts with Missouri to warrant the exercise of personal jurisdiction. Avera is incorporated in South Dakota with its principal office in Sioux Falls, South Dakota. (ECF No. 17-3, ¶¶ 3-4). Avera is not licensed or registered to transact business in Missouri, (*Id.* at ¶ 7); it does not have employees in Missouri, (*Id.* at ¶ 8); it does not own, lease, or otherwise maintain property in Missouri, (*Id.* at ¶ 9); and it does not generate revenue from Missouri. (*Id.* at ¶ 10). It is Avera's contacts with Missouri—not its contacts with a corporation that happens to be here—that drive this analysis. *Pederson*, 951 F.3d at 981. Those contacts are minimal. The third factor weighs against the exercise of personal jurisdiction over Avera.

"The less important fourth and fifth factors offset each other here." *Morningside Church*, 9 F.4th at 621 (citing *Whaley*, 946 F.3d at 453) (internal quotation marks omitted). "[W]hile Missouri has an interest in establishing a forum for its residents, that forum is an inconvenient one

for the defendants, who are not from Missouri and have no business in the state." *Id.* (citing *Whaley*, 946 F.3d at 453).

## CONCLUSION

Considering all five factors, the Court finds that VPS has not demonstrated that Avera's conduct connects it to Missouri in a meaningful way. *See id.* (citing *Walden*, 571 U.S. at 290). Because the exercise of personal jurisdiction over Avera would violate the due process clause, the Court need not address the scope of Missouri's long-arm statute. *Morningside Church*, 9 F.4th at 619 ("Because the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause.") (citation and internal quotation marks omitted). Further, because the Court lacks personal jurisdiction over Avera, it will not address Avera's arguments relating to venue and forum non conveniens.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Avera Health Plans, Inc.'s Notice of Supplemental Authority (ECF No. 22) is **STRICKEN** for failure to seek to leave of this Court prior to filing. Plaintiff's response thereto (ECF No. 23) is also **STRICKEN**. The Clerk of the Court shall delete ECF Nos. 22 and 23 from the record.

**IT IS FURTHER ORDERED** that Defendant Avera Health Plans, Inc.'s Motion to Dismiss or Transfer (ECF No. 16) is **GRANTED**.

An appropriate Order of Dismissal will accompany this Memorandum and Order.


_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this 14th day of February, 2022.

16